# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

FILED BY ___ D.C.

05 MAY -5  PM 3: 13

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| **DONALD R. DEPRIEST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 2:02-2177** |
| ) | |
| **ELLEN H. HARDYMON and** ) | **JUDGE McCALLA** |
| **MSB FINANCIAL SERVICES** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |

---

## COURT'S DECISION AND ENTRY

---

This matter came before the Court for a bench trial on April 25 and 26, 2005. The case arises out of Defendants' sale of stock in a Tennessee corporation to Plaintiff on November 15, 1999. Plaintiff later filed this lawsuit, claiming that Defendants misrepresented and/or omitted to disclose material facts respecting the purchase of the stock. Plaintiff sought damages for, among other things, alleged common law fraud, negligent misrepresentation and fraudulent inducement to contract. Defendants counterclaimed against Plaintiff for the balance due under a promissory note tendered as part of the consideration for the stock. Following the presentation of evidence at trial, the Court ruled in favor of Defendants on the complaint and on the counterclaim.

The corporation at issue in this case is SecurAmerica Holding Corporation, which at one time was the parent company for a Business Industrial Development Corporation called SecurAmerica

- 1 -

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  5-9-05



Business Credit.[1] SecurAmerica was founded by H. Morgan Brookfield and W. Randall Reagan, and it was in the business of loaning money to small and medium size businesses. The loans to be secured by the assets of the borrowing companies.

Defendant MSB acquired 750,000 shares and majority interest in SecurAmerica pursuant to a Shareholders' Agreement (Tr. ex. 12), which was executed by all of the shareholders, including Reagan and Brookfield. The Shareholders' Agreement allowed MSB to designate an individual to sit on the Board of Directors. Defendant Ellen Hardymon, who was affiliated with MSB, was MSB's designated Board member.

The Shareholders' Agreement also provided for employment contracts for Brookfield as Chairman of SecurAmerica and for Reagan as its President and Chief Executive Officer. These contracts were subject to termination by a majority vote of the shareholders if the company failed to achieve certain earnings projections in the first two years of operation and Brookfield and Reagan failed to purchase the stock of any shareholder who wanted to sell. In addition, the Shareholders' Agreement also provided that if SecurAmerica failed to meet the first or second earnings targets, any shareholder had the right to sell his (or her) shares and SecurAmerica, and Brookfield and/or Reagan had the right to purchase those shares for $1.00 per share plus 8% interest for the period the shares were held. In the event the stock was not purchased, a majority of the shareholders had the right to terminate the employment contracts, liquidate the company and distribute its assets to the shareholders.

SecurAmerica commenced business operations in July, 1997. From November, 1997 to June, 1999, SecurAmerica held quarterly Board of Director meetings. Hardymon attended all Board

---

[1] SecurAmerica Holding Corporation and SecurAmerica Business Credit will be collectively referred to as "SecurAmerica."

meetings. Financial statements for SecurAmerica were submitted to the Board at its meetings. There was no evidence that Hardymon knew of any material problems with SecurAmerica's operations at any time prior to November 15, 1999.

In 1999, the state and federal regulators informed MSB's parent company (a state chartered savings and loan named United Midwest Savings Bank) that MSB's investment in SecurAmerica was not a permissible investment. MSB (and its parent) applied for approval for the SecurAmerica investment. While the application was pending, the accounting firm of Hoff, Davis & Dilley, PLC issued its "Audited Consolidated Financial Statements" for SecurAmerica for March 31, 1999 and 1998. (Tr. ex. 9). According to the audited financial report, SecurAmerica did not meet its second earnings target. After receipt of the audited financial data, MSB elected to exercise the takeout right in the Shareholders' Agreement. On May 19, 1999, Hardymon sent a letter (Tr. ex. 31) to Brookfield notifying him of MSB's decision to invoke the takeout option.

Following receipt of the May 19 letter, Brookfield and Reagan requested time to locate financing to acquire MSB's shares, and they were granted until November 15, 1999. Brookfield and Reagan committed to find financing to acquire MSB's 750,000 shares. Reagan and Brookfield later identified Plaintiff DePriest as the buyer for the MSB's shares. DePriest was a sophisticated investor. His April 30, 1999 personal financial statement reflected $98,177,000 in assets and various investments. (Tr. ex. 45). Brookfield had known DePriest since approximately 1974. DePriest had some involvement with SecurAmerica prior to being approached about MSB's shares. DePriest had personally borrowed $400,000 from SecurAmerica (Tr. ex. 5), and he was the founder, chairman and majority shareholder of a company (Maritel) that previously had borrowed $1.5 million from SecurAmerica.

- 3 -

Brookfield and Reagan had discussions with DePriest about acquiring the shares. The discussions between Brookfield, Reagan and DePriest were not done at Hardymon's request. Instead, Reagan and Brookfield did this on their own to prevent the company from being liquidated. Neither Brookfield nor Reagan had any conversations with DePriest at Hardymon's direction. Nor did Brookfield or Reagan act as MSB's agent in attempting to find a buyer for the MSB shares.

Reagan instructed SecurAmerica's legal counsel to prepare a stock purchase agreement to acquire MSB's shares. On September 9, 1999, Reagan wrote a memorandum to Hardymon about the efforts to acquire MSB's stock and he noted that for the purposes of the stock purchase agreement, "Morgan and I are the purchasers of the shares" and that "Don DePriest is the liquidity source that we expect to provide funding to complete the stock purchase." (Tr. ex. 21). On October 11, 1999, United Midwest (on behalf of MSB), Brookfield, Reagan and SecurAmerica entered into the "Stock Purchase Agreement," (Tr. ex. 14) whereby Brookfield and Reagan agreed to purchase the 750,000 shares for $750,000 in cash on November 15, 1999 plus a promissory note for $157,640.42 to be paid in three installments.

In November, 1999, Brookfield and Reagan assigned their rights under the Stock Purchase Agreement to DePriest. (Tr. ex. 37) On or about November 15, 1999, Plaintiff wired $750,000 to the account of MSB and signed a promissory note for $157,640.42 (the "Note"). (Tr. ex. 2). Pursuant to the terms of the Note, DePriest "unconditionally and absolutely promise[d] to pay" the sum of $157,640.42. The Note also provided that in the event of any suit to collect on the promissory note, the "holder of the note" (MSB) "shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney fees."

In December 2000, DePriest became a member of the SecurAmerica Board of Directors. At this meeting, the problems with SecurAmerica's operations, including the problems with the loan portfolio, were discussed. This meeting was the first notification to SecurAmerica Board members (other than Reagan and Brookfield) of problems with the company. Subsequent investigations revealed significant problems with the loan portfolio. On March 7, 2001, the Board eventually discharged Reagan.

DePriest made one payment on the Note. DePriest later claimed that Defendants misrepresented the status of SecurAmerica and/or failed to disclose material facts to him. He then sought to rescind his purchase of the shares. DePriest did not make any other payments on the Note.

On March 14, 2002, DePriest filed this lawsuit against Hardymon and MSB for federal and state securities law violations, breach of fiduciary duty, breach of contract, fraud, negligent misrepresentation, and fraudulent inducement. Defendants answered the complaint and MSB counterclaimed against Plaintiff for the outstanding indebtedness due on the note plus interest, and the costs of collection, including attorney fees. Defendants moved for summary judgment on all claims against them and on the counterclaim. On September 1, 2004, the Magistrate Judge issued a Report and Recommendation ("Report") granting Defendants' motion for summary judgment in its entirety. On September 30, 2004, the Court adopted a portion of the Report and ruled that there were factual issues regarding Plaintiff's claims for fraud, negligent misrepresentation and fraudulent inducement. Due to the presence of these factual issues, the Court did not adopt the Report respecting the counterclaim.

On April 25, 2005, the Court convened a bench trial on the remaining counts. Plaintiff bore

the burden of proof on his claims for fraud, negligent misrepresentation and fraudulent inducement. Defendant MSB bore the burden of proof on its counterclaim.

After reviewing the testimony of the witnesses and the trial exhibits, the Court finds that Plaintiff failed to meet the burden of proof on his claims. The Court therefore finds in favor of Defendants on Plaintiff's claims for fraud, negligent misrepresentation and fraudulent inducement.

With regard to the counterclaim, the Court finds that Defendant MSB has met its burden of proof. MSB is the current holder of the Note. Plaintiff has failed to pay in accordance of the terms of the Note. The unpaid principal balance due on the Note is $105,093.61. As of May 5, 2005, the interest due on the Note is $38,075.55. Defendant is therefore entitled to a judgment in the amount of $143,169.16. Defendant also is entitled to receive litigation expenses and reasonable attorney fees. Defendant is therefore directed to submit an application for fees and expenses.

So ORDERED this _____5_____ day of May, 2005

Jon P. McCalla
United States District Judge

- 6 -

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 75 in case 2:02-CV-02177 was distributed by fax, mail, or direct printing on May 9, 2005 to the parties listed.

---

Jeffrey A. Yeager
SQUIRE SANDERS & DEMPSEY LLP
1300 Huntington Center
41 S. High Street
Columbus, OH 43215

Keith Shumate
SQUIRE SANDERS & DEMPSEY LLP
1300 Huntington Center
41 S. High Street
Columbus, OH 43215

Robert K. Alvarez
BOURLAND HEFLIN ALAREZ & MINOR
5400 Poplar Avenue
Ste. 100
Memphis, TN 38119

John Marshall Jones
BOURLAND HEFLIN ALAREZ & MINOR
5400 Poplar Avenue
Ste. 100
Memphis, TN 38119

William M. Jeter
LAW OFFICE OF WILLIAM JETER
35 Union Ave.
Ste. 300
Memphis, TN 38103

John J. Heflin
BOURLAND HEFLIN ALAREZ & MINOR
5400 Poplar Avenue
Ste. 100
Memphis, TN 38119

Honorable Jon McCalla
US DISTRICT COURT